Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a New York corporation, sues to recover certain items of loss, predicating its right of recovery upon the act of June 15,1917 (40 Stat. 182), wherein just compensation is to be awarded to contractors whose contracts were canceled or suspended during the war. The material facts bring the case to one vital issue, and that is the question of the authority of the Government official who made the contracts to bind the Government. Both plaintiff and defendant agree to this statement and the briefs of counsel are directed to it.
The Shipping Board Emergency Fleet Corporation, acting in pursuance of the delegated authority of the President to act — Executive order of July 11, 1917 — was engaged in carrying out the war program to build wooden ships. A district office of the Fleet Corporation was to this end functioning in New York City. The Albee & Godfrey Co., a New York corporation, engaged in the manufacture of architectural ironwork for buildings, had on September 17, 1918, negotiations pending for contracts to supply certain *686 materials and supplies to the Fleet Corporation, whose present needs in this respect were vast and urgent. On September 17, 1918, the plaintiff corporation was organized. Charles P. Albee and James G. Godfrey, of the Albee and Godfrey corporation, owned one-half of the stock and M. N. Newman the remaining half. Immediately following the organization of the plaintiff corporation the pending negotiations of the Albee & Godfrey Co. were conducted by the plaintiff corporation and during the period of time involved in this suit numerous oral orders were given the plaintiff for the materials and supplies for the value of which, together with profits, this suit is brought. The orders relied upon were given to plaintiff by E. S. Niger, an official of the Fleet Corporation, subordinate to the district superintendent of New York, whose duties were embraced within the title “ Chief Traffic Engineer.” It is not disputed, and may not be, that a positive order from the vice president of the Fleet Corporation dated August 15, 1918, was in force, by the terms of which all contracts for the purchase or manufacture of materials and supplies were to be made only through the purchasing department of the Fleet Corporation. The plaintiff was well aware of this limitation upon officers of the Fleet Corporation to enter into contracts, for during the period of time from August, 1918, until October, 1919, several formal orders from the Fleet Corporation were placed with it in compliance with the order of August 15, 1918, and the materials and supplies furnished were paid for. There is no doubt that when the Fleet Corporation declined to recognize plaintiff’s contracts the materials, the value of which is the subject-matter of this suit, were on hand and in the possession of the plaintiff and its subcontractor. No controversy obtains as to this fact. The plaintiff concedes that all the orders for the above materials were verbal orders given directly by Niger and were neither confirmed nor issued through the purchasing department of the Fleet Corporation. Authority to bind the Government by contract is an indispensable prerequisite to an enforceable contract. The rule as thus stated is conceded and we need not cite a long list of familiar authorities to sustain it. Even under the Dent Act (40 Stat. 1272) authority to enter into informal *687 contracts made during the war under emergency conditions must be proyen. Jacob Reed's Sons v. United States, 273 U. S. 200. An elaborate brief upon the part of the plaintiff seeks to overcome this obstacle to a recovery by reliance upon the doctrine that where an agent of a corporation exercises authority to contract with the knowledge and acquiescence of the officials of the corporation, and acts within the scope of the corporation’s business, the corporation is bound, irrespective of positive authority upon the part of the agent, to act. We do not have to meet such a contention in this case because the record precludes the possibility of its assertion.
Newman, the official representative of the plaintiff in charge of negotiations for and the procurement of contracts from the Fleet Corporation, was a former official of the corporation and, of course, familiar with its proceedings. In addition to this, the record indisputably discloses that the plaintiff, through Newman, repeatedly sought from Niger written orders from the purchasing department confirming Niger’s oral ones, and did himself directly seek the confirmation of the purchasing department. To ascribe to Newman and Niger a lack of knowledge of the limitations of Niger’s authority to contract for the amount and quantity of supplies involved herein would be contrary to all the evidence in the record. The Fleet Corporation was not .investing authority upon a subordinate official of the same to enter into contracts, either written or oral, ad libitum.
On September 26, 1919 (Finding XIII), Newman, Albee, and Godfrey, individually, executed a written contract by the terms of which Newman acquired the interests of Albee and Godfrey in the American Standard Ship Fittings Corporation, i. e., the New York Corporation. As a part consideration for the above sale the corporation assigned to Albee and Godfrey the present claim against the United States, and the Albee & Godfrey Co., Inc., later on filed a claim with the Fleet Corporation for the sums herein demanded. The claim was, after investigation, denied. The assignment of the claim to Albee and Godfrey is under section 3477, Revised Statutes, null and void.
*688 “ Sec. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.”
On March 30, 1920, Newman organized under the laws of Delaware a second corporation, known as the American Standard Ship Fittings Corporation, duplicating the name of the New York corporation, and thereafter by bill of sale Newman, acting for and on behalf of the New York corporation of which he was- then the sole stockholder, sold and transferred to the Delaware corporation all the assets of the New York corporation, and proceeded under the laws of New York to dissolve the latter and surrender its charter.
On February 4, 1927, the Delaware corporation filed a petition to intervene, in which facts are alleged upon which ownership 6f the claim is asserted, predicating its right to prosecute this suit, in virtue of the decision of the Supreme Court in Seaboard Air Line Railway v. United States, 256 U. S. 655.
The defendant has filed a motion to dismiss the intervening petition. The statute of limitations is invoked. Section 156, Judicial Code. We think the defendant’s motion should be allowed. The statute of limitations which is jurisdictional in this court—United States v. Wardwell, 172 U. S. 48, 52—begins to run when a suit may first be brought under our jurisdictional act. Rice v. United States, 122 *689 U. S. 611, 617. As early as October 29, 1918, the real parties in interest were expressly notified that verbal orders for materials or supplies unconfirmed by written orders from the district purchasing office were of no force and effect. Again, on March 30, 1920, this claim, then outstanding as alleged in the petition, was, as alleged by the Delaware corporation, by operation of law transferred to it. The intervening petition of the Delaware corporation was not filed until February 4, 1927, almost seven years after the organization of the same and almost eight years after the claim accrued, whereas the statute of limitations prescribes a six-year limitation. We think the proper plaintiff is in court, i. e., the New York corporation. (Finding XV.) It was never the intention of the plaintiff to assign this claim to the Delaware corporation; it was not listed as one of the assets of the New York corporation conveyed by the bill of sale, and the Delaware corporation did not regard the claim as assigned to it, for when the latter was in the bankruptcy courts this claim was not scheduled as one of its assets.
The plaintiff filed its original petition in this case on June 24, 1924, and it was not until almost three years thereafter that the intervening petition was filed. No evidence was taken upon behalf of the intervenor and nothing appears of record in its behalf except the filing of its intervening petition. No extended brief appears in its behalf and no counsel appeared in. argument. The defendant interposes a counterclaim. The evidence to sustain the same is not sufficient and we so find.
The petition is dismissed. It is so ordered.
Williams, Judge; Littleton, Judge; and Green, Judge, concur.
Whalet, Judge, did not hear this case and took no part in its decision.